Marsha MIKEL *v.* ENGINEERED SPECIALTY PLASTICS

CA 96-758                                938 S.W.2d 876

Court of Appeals of Arkansas
Division IV
Opinion delivered March 5, 1997

*Lane, Muse, Arman & Pullen*, by: *Donald C. Pullen*, for appellant.

*Walter A. Murray*, for appellee.

SAM BIRD, Judge. Marsha Mikel appeals from a decision by the Workers' Compensation Commission, which found that she did not suffer a compensable injury on January 29, 1994, while working for appellee, Engineered Specialty Plastics, as a machine operator. In September 1993, Mikel started working with Engineered Specialty Plastics on the assembly line snipping gates, which are pieces of plastic that are attached to parts when they come out of the machines. On January 29, 1994, she was moved to a different assembly line, where she clipped larger gates. To clip gates, appellant squeezed clippers, which she said sometimes caused soreness in the palm of her hand. When she changed to a different assembly line, clipping larger gates, she was required to use bigger clippers, which apparently caused her hand to become sore and bothersome. After working about five hours on the new assembly line, "something in her wrist snapped"; and she said the incident felt like a rubber band popping. Afterward she could not close the clippers. She testified that she reported the injury to her supervisor on January 29, and at the time, her hand appeared red, swollen, and had a bump on the top of her wrist. This was the first time she had complained to her supervisor about any pain that she experienced while snipping gates. However, contrary to her testimony, an accident report indicates that appellant did not

report the accident to her supervisor until January 31. The report also states that appellant informed her supervisor that she had been experiencing problems with her hand ever since she began working for appellee, but the report does not mention any swelling.

Appellant was sent to the company doctor who diagnosed her with right wrist strain, possible early carpal tunnel syndrome, and who prescribed medication and a wrist splint; however, the doctor's report also does not mention any swelling. In addition, the doctor also recommended work activity that did not involve Mikel's right hand.

Appellant returned to work and informed her supervisor that the doctor had recommended not using clippers, but the appellant's supervisor did not take her off the line, which caused her hand to get worse. On April 27, 1994, the doctor eventually recommended not using her right hand at all, and the appellee provided Mikel with light work duty.

Appellee had paid for all of appellant's medical expenses, up until the time that the company doctor referred appellant to an orthopaedic surgeon, Dr. Michael Moore. Instead of telling Dr. Moore of a specific incident that caused her pain, Mikel said the pain was a result of a gradual onset of problems. Dr. Moore diagnosed Mikel with carpal tunnel syndrome and performed surgery on June 30, 1994, and the appellee controverted the claim. Mikel was released to work on September 19, 1994.

Mikel filed a claim with the Commission for temporary total disability from June 30–September 19, 1994, and a hearing was held before an administrative law judge on October 21. Mikel did not call the supervisor as a witness to testify about the swelling, and she was the only witness at the hearing. At the hearing, the respondents asked the administrative law judge to take judicial notice that carpal tunnel syndrome could not result from a single incident under Ark. Code Ann. § 11-9-102(5)(A)(i) (Supp. 1993), as Mikel claims, because carpal tunnel syndrome is specifically provided for under Ark. Code Ann. § 11-9-102(5)(A)(ii)(a) (Supp. 1993). The judge declined to take judicial notice and found that Mikel had suffered a compensable injury. The Workers' Compensation Commission reviewed Mikel's claim and reversed, find-

ing that she had failed to prove by a preponderance of the evidence that she had sustained a compensable injury. We agree and affirm the Commission's order.

■ ■ When determining the sufficiency of the evidence, this court gives deference to the Commission's findings and affirms if those findings are supported by substantial evidence. *Crossett Sch. Dist. v. Gourley*, 50 Ark. App. 1, 899 S.W.2d 482 (1995). Substantial evidence is defined as evidence that a reasonable mind would accept as adequate to support a conclusion. *Id.* at 3, 899 S.W.2d at 483. A decision by the Commission is reversed only if this court is convinced that "fair-minded persons" using the same facts could not reach the same conclusion reached by the Commission. *Id.* (citing *Willmon v. Allen Canning, Co.*, 38 Ark. App. 105, 828 S.W.2d 868 (1992)). The worker filing the claim with the Commission has the burden of proving by a preponderance of the evidence that the claim is a result of an injury arising from the course of employment. *Deffenbaugh Indus. v. Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992). This court will defer to the Commission in determining the weight of evidence and the credibility of the witnesses. *McClain v. Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989); *Morrow v. Mulberry Lumber, Co.*, 5 Ark. App. 260, 635 S.W.2d 283 (1982).

■ Mikel, who has the burden of proving her injury by a preponderance of the evidence, filed her claim with the Commission pursuant to Ark. Code Ann. § 11-9-102(5)(A)(i). The statute defines one type of compensable injury as, "[a]n accidental injury causing internal or external physical harm to the body or accidental injury . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is 'accidental' only if it is caused by a specific incident and is identifiable by time and place of occurrence." The appellant must prove her injury by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(5)(D) (Supp. 1993).

■ The issue before this court is whether any medical evidence exists to support the fact that appellant experienced an injury due to a specific incident, as opposed to her injuries being

gradual. Neither doctor mentioned any swelling of the wrist, as reported by appellant. Appellant claims that her supervisor witnessed the swelling. However, the supervisor did not testify to that nor was it stated in the accident report. Both doctors acknowledge that the appellant has carpal tunnel syndrome, but neither acknowledged that it was caused by a specific incident. Dr. Moore, in a medical report, wrote,

> [S]he developed symptoms shortly after she began work. . . . Therefore, she may have had an underlying carpal tunnel syndrome prior to work which was exacerbated with her new job. In other words, it is difficult for me to solely relate her carpal tunnel syndrome to her work which she performed for only a two month period before experiencing symptoms.

After reviewing the medical testimony by both doctors, this court agrees that the appellant did not prove her claim by a preponderance of the evidence.

An issue not relied upon by appellant, but brought up by appellee, concerns the interpretation of Ark. Code Ann. § 11-9-102(5)(A)(ii) (Supp. 1993), which provides compensation for injuries that cannot be identified by time and place of occurrence. Carpal tunnel syndrome, which may be caused by a rapid repetitive motion, is specifically categorized as falling into this definition. Ark. Code Ann. § 11-9-102(5)(A)(ii)(a). However, because it is not an issue before us and because we are not reversing the Commission's finding, we do not have to decide whether this part of the statute excludes carpal tunnel syndrome from falling under other statutes.

Because appellant has failed to meet her burden of proof, the Commission's decision should be affirmed.

COOPER and STROUD, JJ., agree.