Douglas JOBE *v.* WAL-MART STORES, INC.

CA 98-668                                    987 S.W.2d 764

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered April 7, 1999

*Stuart Vess*, for appellant.

*Mike Roberts*, for appellee.

JOHN E. JENNINGS, Judge. Douglas Jobe has appealed from the decision by the Workers' Compensation Commission that denied his claim for workers' compensation benefits based on a finding that Jobe's incisional hernia injury caused by repetitious heavy lifting over a gradual period of time was not a "compensable injury" within the meaning of Ark. Code Ann. § 11-9-102(5)(A)(ii)(a) (Supp. 1997). Jobe contends that the record does not contain a substantial basis for the decision denying his claim for benefits. We affirm.

Jobe worked for Wal–Mart in the shipping department at its warehouse distribution center in Searcy, Arkansas, and testified that he was in excellent health before September 6, 1994. Some four months or so before September 1994, Jobe transferred to the nonconveyable area. Production in the nonconveyable area con-

sisted of 125 boxes or pieces of merchandise per hour involving such cumbersome, large, and heavy items as air conditioners and home entertainment centers. Jobe testified that when he handled that merchandise it would frequently impact against his abdomen or stomach.

Sometime in 1989, Jobe underwent an appendectomy after his appendix ruptured. He denied suffering any residual pain or symptoms in his abdominal region after the 1989 appendectomy. Jobe could not identify a specific event or occurrence on September 6, 1994, that involved an injury. However, he testified that at one point during the day he went to the bathroom and noticed blood in his stool. He also noticed that he had to stop and rest on account of dizziness, which he thought was heat related. His sensation of fatigue and dizziness increased to the point that he was concerned about losing consciousness while driving home from work on September 6, 1994. While bathing at home after work that day, Jobe felt a sensation as if he had been struck in the stomach with a sledgehammer. That sensation was followed by severe rectal bleeding. He was rushed to the emergency room of Baptist Medical Center where he ultimately came under the care and treatment of Dr. Charles Rogers, Jr., a Little Rock surgeon, because of the bleeding in his GI tract.

Dr. Rogers eventually diagnosed Jobe's condition as an incisional hernia caused by gradual deterioration of the tissue surrounding the old appendectomy incision and Jobe's heavy lifting at Wal-Mart. Repeated surgical attempts to repair the condition have been tried without success. Jobe testified at the hearing before the Commission's administrative law judge that he has undergone at least thirteen surgical procedures and has not worked since September 6, 1994. Dr. Rogers' opinion concerning the nature, origin, and cause of Jobe's condition and that it was caused by the heavy lifting done at Wal-Mart is not disputed in the record. However, the administrative law judge denied Jobe's claim for temporary total disability benefits from September 6, 1994, to a date yet to be determined, as well as his claim for medical benefits associated with his incisional hernia. The ALJ found that Jobe's injury was neither a hernia within the meaning of Ark. Code Ann. § 11-9-523 nor a gradual-onset compensable injury

caused by rapid repetitive motion within the meaning of Ark. Code Ann. § 11-9-102(5)(A)(ii)(a). The Commission affirmed and adopted that decision.

■ When the Commission denies coverage because a worker has failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission if its opinion displays a substantial basis for the denial of relief. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997). In determining the sufficiency of the evidence to sustain the findings of the Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *City of Fort Smith v. Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case de novo. *Tyson Foods, Inc. v. Disheroon*, 26 Ark. App. 145, 761 S.W.2d 617 (1988).

The Commission held that the claim is controlled by the definition of "compensable injury" found in the Workers' Compensation Law as it was revised by Act 796 of 1993. That definition is codified at § 11-9-102(5)(A) and reads, in pertinent part, as follows:

"Compensable injury" means:

(i) An accidental injury causing internal or external physical harm to the body or accidental injury to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence;

(ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is

not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:

(*a*) Caused by rapid repetitive motion. Carpal tunnel syndrome is specifically categorized as a compensable injury falling within this definition;

(*b*) A back injury which is not caused by a specific incident or which is not identifiable by time and place of occurrence;

(*c*) Hearing loss which is not caused by a specific incident or which is not identifiable by time and place of occurrence;

(iii) Mental illness as set out in § 11-9-113;

(iv) Heart, cardiovascular injury, accident, or disease as set out in § 11-9-114;

(v) A hernia as set out in § 11-9-523.

Both parties acknowledge that appellant's injury does not meet the requirements for a hernia injury as set out in § 11-9-523, and that it does not constitute an "accidental" injury (meaning one caused by a specific incident and identifiable by time and place of occurrence) within the meaning of § 11-9-102(5)(A)(i). Thus, we must review the Commission's decision to determine whether the record provides a substantial basis for its finding that Jobe failed to prove that the incisional hernia caused by gradual heavy lifting at Wal-Mart was a compensable injury caused by rapid repetitive motion.

■ The Commission adopted the opinion of the ALJ that relied upon Jobe's testimony that the production schedule required him to handle 125 nonconveyable items per hour. Jobe testified that the work was not rapid, that it was too slow for him, and that he was accustomed to faster work on a conveyor line where merchandise was back to back. Based upon that testimony, the Commission concluded that Jobe failed to prove that his incisional hernia was caused by rapid repetitive motion; his work was repetitive but not rapid. We have previously observed that rapid repetitive motion claims require proof that tasks associated with an injury be repetitive and that the repetitive motion be rapid. *Lay v. United Parcel Service*, 58 Ark. App. 35, 944 S.W.2d 867 (1997).

■ In our view, the Commission's opinion displays a substantial basis for its denial of the relief sought.

Affirmed.

BIRD and ROAF, JJ., agree.

GRIFFEN, J., concurs.

PITTMAN and NEAL, JJ., dissent.

WENDELL L. GRIFFEN, Judge, concurring. Jobe contends that the record does not contain a substantial basis for the decision denying his claim for benefits. I reluctantly disagree and join the decision to affirm the Commission despite my conviction that denial of compensation in this instance contravenes the historical purposes for which workers' compensation legislation was created.

Jobe's testimony that his work was not rapid provided the substantial basis for denying his claim. However, Jobe's claim shows, with painful clarity, the draconian effect that the changes to our Workers' Compensation Law has on injured workers. Jobe presented clear, credible, and uncontroverted proof that his injury resulted from the gradual effect of heavy lifting on his job at Wal-Mart. Dr. Rogers' opinion is undisputed that the weakened abdominal wall from the appendectomy coincided with the heavy lifting at Wal-Mart to produce the incisional hernia that has prevented Jobe from returning to work since September 6, 1994.

Yet the present definition of a "compensable injury" leaves Jobe uncompensated. He knows that his injury occurred at Wal-Mart. Wal-Mart knows that his injury occurred because of his work there. But because Jobe's heavy lifting was not rapid, he cannot receive compensation for his injury and the thirteen surgeries that he has sustained.

Whatever the rationale might have been for adding the rapid repetitive motion requirement to the definition of compensable injury, the requirement plainly discriminates against workers like Jobe who work on difficult, heavy, and repetitive jobs that are not rapid but that result in serious injury nonetheless. Jobe's gradual-onset injury would have plainly been compensable under prior

law based upon this record because it arose out of and in the course of his employment, with no determination as to whether it was rapid or slow, repetitive or static.

Although the more restrictive definition of a compensable injury enacted by Act 796 was intended to reduce the number of gradual-onset claims that workers might assert against their employers under the workers' compensation law, its long-term effect may be to expose employers to more expensive liability in tort than they faced under prior workers' compensation law. For example, now that Jobe's claim has been held noncompensable, Wal-Mart cannot assert the exclusive-remedy provision of the Workers Compensation Law as a bar to a civil action in tort. Jobe might assert a tort claim against Wal-Mart based on its statutory duty to provide a safe workplace prescribed by Ark. Code Ann. § 11-2-117(a), which reads:

> Every employer shall furnish employment which is safe for the employees therein and shall furnish and use safety devices and safeguards. He shall adopt and use methods and processes reasonably adequate to render such an employment and place of employment safe and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of the employees.

If employees such as Jobe file and pursue tort actions against their employers for gradual-onset injuries that do not involve rapid repetitive motion, it is likely that the potential exposure facing those employers for defending those claims might be greater than the cost of providing compensation benefits when one adds the potential recoveries for pain and suffering possible in jury verdicts.

Workers' compensation was designed to make this litigious and expensive process unnecessary for workers and employers, while ensuring that injured and disabled workers such as Jobe would not be doomed to poverty while awaiting the outcome of the tort process. It is regrettable that the scheme of social legislation that was supposed to provide prompt treatment and compensation to injured workers has developed into a process whereby hard-working people are left injured, uncompensated, and plagued by medical expenses simply because they work at tasks that are too

slow to be rapid and too infrequent to be deemed repetitive. Although I am obligated by the rule of law and our judicial role to affirm the result in this case, neither the rule of law nor my duty to interpret the revised workers' compensation statute can blind and muzzle me concerning the harsh result our decision means for this diligent injured worker.

JOHN MAUZY PITTMAN, Judge, dissenting. This case calls into question a finding of the Workers' Compensation Commission to the effect that loading and unloading 125 extremely heavy items per hour does not constitute rapid repetitive motion. The appellant's job was to load and unload items from a cart 125 times per hour. The items were all very big and heavy — like entertainment centers and 2400 BTU air conditioners — and the cart held seven items. Every hour appellant made eighteen trips with his cart and handled the extremely heavy items he transported approximately 250 times.

I agree with appellant's argument that the Commission should have considered the nature of the work in determining whether it was being performed rapidly. When determining whether motion is rapid and repetitive for purposes of the Workers' Compensation Act, the Commission must consider all of the individual movements involved. *Baysinger v. Air Systems, Inc.,* 55 Ark. App. 174, 934 S.W.2d 230 (1996). Viewed in this light, I do not think it reasonably could be said that appellant's motion was not rapid as well as repetitive. Had the legislature wished to define rapidity in absolute terms, it could easily have specified the number of movements per hour that would be required before motion would be considered rapid. Because the Commission did not define rapidity in such absolute terms, I believe that rapidity is a relative term under the Act that must be defined in context of the work involved. Lifting a pencil twenty times per minute may not be rapid, but lifting a piano twenty times per minute would be a different matter entirely.

I respectfully dissent.

NEAL, J., joins in this dissent.